IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BRADLEY CARL BROWN,**

    **Plaintiff,**

**v.**                                           Civil action no. 5:08cv83
                                                   (Judge Stamp)

**FEDERAL BUREAU OF PRISONS,**
**HARLEY G. LAPPIN, Director, Federal BOP,**
**AL HAYNES, Former Warden,**
**D.E. GILL, Former Associate Warden,**
**HAROLD TAYLOR, Former Associate Warden,**
**V. DUPRIS, Former Lieutenant, and**
**D. MURPHY, Former Lieutenant,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On April 1, 2008, the *pro se* plaintiff, Bradley Carl Brown, initiated this case, which was docketed as civil rights complaint filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On April 20, 2009, the undersigned conducted a preliminary review of the file and ordered that a sixty day summons be issued for each of the defendants. On July 24, 2009, the defendants filed a Motion to Dismiss the individual defendants and substitute the United States as the sole defendant based on the theory that the plaintiff's complaint raised a claim pursuant to the Federal Tort Claims Act ["FTCA"]. On July 24, 2009, the United States filed a Motion to Dismiss the FTCA, alleging that the

1

plaintiff had failed to exhaust his administrative claims prior to filing the instant action. Also on July 24, 2009, the defendants filed a Motion to Dismiss the plaintiff's complaint on various grounds should the Court be inclined to review this matter as a Bivens action. On July 27, 2009, the undersigned issued a Roseboro Notice. On July 28, 2009, the plaintiff filed a Motion seeking leave to amend his complaint to add another individual defendant. On August 10, 2009, the plaintiff filed a second Motion seeking leave to amend his complaint. On August 19, 2009, the plaintiff filed responses to the defendants' various motions to dismiss.

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff alleges that on March 7, 2006, while incarcerated at USP Hazelton, five inmates threatened him. Consequently, he was forced to request protective custody through placement in the Special Housing Unit ["SHU"]. The plaintiff further alleges that when he realized that staff were refusing to discipline the inmates who had threatened him, he requested to be released from the SHU. The plaintiff also alleges that he outlined these facts in Cop-outs to many of the staff, including defendants, Haynes, Gill, Taylor, Dupuis, Murphy and Thompson. The plaintiff complains that they refused to deter his assailants and failed to places "separations" between them. According to the complaint, after the plaintiff discussed these matters with defendant Murphy, two of his assailants were released from disciplinary segregation after only two weeks. Finally, the plaintiff alleges that defendant Murphy refused to take any action when the he informed him of renewed threats moments before he was assaulted on March 29, 2006. The plaintiff asserts that the Bureau of Prisons ["BOP"] and its director, Harley Lappin are culpable for the assault. The plaintiff maintains the BOP and its staff at all levels actually encourage and reward the bullies and gangs when they play the "blame the victim game" and stall proper investigations into multi-tiered conspiracies behind many acts of

2

violence. As relief, the plaintiff asks this court to: (1) expunge his entire disciplinary record; (2) transfer him to FCI-Sandstone, MN; (3) grant him outside custody so that he can work outside the institution; (4) grant him monthly weekend furloughs for work; (5) reduce his sentence to ten (10) years; (6) terminate his twenty (20) years sentence pending for a parole violation hearing before the United States parole Commission; and (7) award him $5,000 upon his release on parole. (Doc. 1, pp. 3-5).

**B. The Defendants' Motion to Dismiss and Motion to Substitute the United States**

The defendants assert that the plaintiff, if at all, states a cause of action arising under state common law tort. The defendants further note that the plaintiff filed an Administrative Tort Claim with the BOP on March 24, 2008, alleging that was assaulted by fellow inmates on March 29, 2006. In his Administrative Tort Claim, the plaintiff alleged that the neglect and wrongful acts of the defendants was the cause of the attack. Accordingly, the defendants argue that the plaintiff intended the pending complaint to proceed as a state common law tort under the FTCA. The United States Attorney has certified that the individual defendants were acting in the scope of their office or employment at the time of this incident. Based on the Certification, the defendants contend that they should be dismissed for the alleged negligent acts, the United States should be substituted, and the case should proceed against the United States.

**C. The United States' Motion To Dismiss FTCA**

The defendant acknowledges that Congress created a limited waiver of sovereign immunity by enacting the FTCA. However, as a condition of the waiver of sovereign immunity, the defendant notes that Congress requires a claimant to present an administrative claim before commencing suit. The plaintiff did file an Administrative Tort Claim on March 24, 2008. The instant complaint was received by the Clerk's office on April 1, 2008, and bears a declaration signed by the plaintiff on March 24,

2008. Under the FTCA, "[a]n action shall not be instituted against the United States for money damages....unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...The failure of an agency to make final disposition of a claim within six months after it is filed, may at the option of the claimant any time thereafter, be deemed a final denial of the claim..." 28 U.S.C. § 2675(a). The defendants argue because the plaintiff did not receive a denial of his FTCA, nor wait six months before filing the instant complaint, it must be dismissed for failure to exhaust his Administrative Claim.

**D. Defendants' Motion to Dismiss Bivens' Claim**

In the event that the Court disagrees that this action is more appropriately adjudicated under the FTCA, the defendants argue in the alternative that the plaintiff's complaint fails to state a claim under Bivens. More specifically they argue that: (1) the statute of limitations has expired as to certain events and persons; (2) the BOP should be dismissed because a Bivens claim is not actionable against federal agencies; (3) The plaintiff's claims for relief, other than his claim for monetary damages, are inappropriate in a Bivens action; (4) the plaintiff claims against defendants Lappin, Haynes, Gill and Taylor should be dismissed based on the theory of respondeat superior; (5) the plaintiff has failed to state claim under the Eight Amendment; and (6) the defendants are entitled to qualified immunity.

**E Plaintiff's First Motion For Leave to File Amended Complaint**

On July 28, 2009, the plaintiff filed a Motion for Leave to File an Amended Complaint. He seeks leave to add G. Cooper, a lieutenant at USP Hazelton as an additional defendant. As grounds, the plaintiff alleges that G. Cooper violated his constitution rights by failing to investigate the actions of the inmates who threatened him or not placing them in the SHU and by failing to forward a detailed report to the S.I.S. lieutenant after he interviewed the plaintiff following the threats. In addition, the plaintiff seeks to correct defendant Lappin's title as Director as opposed to Warden. Finally, the

4

plaintiff seeks to amend his request for relief to seek compensatory damages of $10,000,000 from the BOP; $1,000,000 from defendant Lappin; $500,000 from each of the defendants, Haynes, Gill, Taylor, Dupris, Murphy, and Cooper; the retirement funds of each of the individual defendants; and punitive damages from the defendants in an amount to be determined by a jury, including termination of their employment. Finally, the plaintiff seeks to add four medical procedures as part of his requested relief: (1) rhinoplasty to correct damage to his nose incurred during the assault against him; (2) laser removal of tattoos to prevent identification by individuals such as his assailants; (3) laser surgery to correct his eyesight; and (4) treatment of infected toenails.

## F. **Plaintiff's Second Motion for Leave to File Amended Complaint**

On August 19, 2009, the plaintiff filed a second Motion for Leave to File an Amended Complaint. In his proposed amended complaint, the plaintiff seeks leave to add the United States as a defendant arguing that the United States violated his constitutional rights by defending the actions of the other defendants and permitting and even encouraging the cycle of inmate-on- inmate violence in federal prisons. The plaintiff also maintains that the United States violated his constitutional rights by failing to investigate and/or prosecute the assailants and refusing to interview the plaintiff in response to his letter of April 24, 2006, alleging staff collusion in such violence. Finally, the plaintiff maintains that the United States, through the United States Attorney for the Northern District of West Virginia, violated his constitutional rights by retaliating against him for exposing staff misconduct and collusion by forwarding a copy of his April 24, 2006 letter to the Warden in which he stated: "I believe that staff encourage such violence and that my only option to defend myself is to use deadly force against the warden and other staff who encourage this violence against me...." (Doc. 58-1). The plaintiff alleges that the letter was sent to the prison for the sole purpose of initiating punitive action against him and not out of any concern for the issues expressed in the letter. As additional relief, the

5

plaintiff seeks a laundry list of operational changes within the BOP which will discourage acts of violence and provide a progressive culture conducive to reform within the prisons. In addition, the plaintiff seeks injunctive relief prohibiting the BOP from transferring the plaintiff from FCC Coleman for any reason or placing him in the SHU for any specious reason.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

6

speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do

more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

**A. The FTCA**

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Section 13466(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable. Richards v. United States, 369 U.S. 1, 6 (1962). This category includes claims that are:

> (1) against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death, (4) caused by the negligent or wrongful act or omission of any employee of the Government, (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b).

Although the plaintiff alleges that the defendants were negligent in that they did not identify the individuals who threatened him and place "separations" on them, a fair reading of the complaint establishes that the plaintiff's primary allegation is that the defendants knew of, and were deliberately indifferent to, a threat to his safety which resulted in a physical assault upon him by other prisoners. This a claim properly brought in a Bivens complaint. Furthermore, the mere fact that the United States Attorney has certified that the defendants were acting within the scope of their employment at the time of the incident out of which the claim arose does not operate to convert a civil rights complaint to a FTCA. Accordingly, the undersigned recommends that the defendants' Motion to Substitute the United States be denied, and the United States' Motion to Dismiss be denied as moot.

**B. Bivens' Claim**

**1. The BOP**

A Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003). Therefore, the Bureau of Prisons cannot be sued in a Biven's action. Furthermore, to the extent that

9

the plaintiff seeks to add the United States as a defendant in his second Motion for Leave to File Amended Complaint, the same should be denied because "any remedy under Bivens is against federal officials individually, not the federal government." Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996).

**2. Harley Lappin**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations ." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of Defendant Lappin. Instead, it appears that Plaintiff has named this Defendant only in his official capacity as the Director of the Federal Bureau of Prisons.[1] However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is not

---

[1] Specifically, the plaintiff only refers to Mr. Lappin once in his complaint when he asserts the following: "[t]he Federal Bureau of Prisons and the Director (Harley G. Lappin) are culpable for the assault against me as well as a major portion of other violence in these institutions because they refuse to implement strategies to deal with the predators, bullies, and gangs." (Doc. 1, p. 4).

available against the defendant in his official capacity. Because the plaintiff has made no affirmative showing that defendant Lappin had any personal involvement in this matter, he should be dismissed from this action.

### 3. **Al Haynes, D.E. Gill, and Harold Taylor**

In his complaint, the plaintiff alleges that he "outlined" facts regarding threats made against him, and the staff's refusal to discipline the perpetrators or deter violence in cop-outs to Warden Haynes, Assistant Warden Gill and Assistant Warden Taylor when they made their weekly rounds. Therefore, the plaintiff makes no affirmative allegation that these three defendants acted personally to deprive him of any of his constitutional rights. Instead, he has named them in their supervisory capacity.

"[T]he decisions of the [Fourth Circuit] have firmly established the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in constitutional injuries that they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

The Fourth Circuit has laid out the requirements that are necessary in order for one to establish supervisory liability. Specifically, in order to establish supervisory liability, the plaintiff must show that: [1] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed pervasive and unreasonable risk of constitutional injury, [2] the supervisor's response to that knowledge was so inadequate as to show deliberate indifference or tacit authorization of the alleged offensive practices, and [3] there was an affirmative causal link between

the supervisor's inaction and the particular constitutional injury suffered. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

As noted previously, the events giving rise to this complaint began on March 7, 2006, when a group of inmates allegedly threatened the plaintiff. He was immediately placed in the SHU while the threats were investigated. On March 13, 2006, the plaintiff sent a handwritten letter to the SHU lieutenant indicated that he did not wanted to be released from protective custody and returned to his regular unit. On March 29, 2006, the plaintiff was released from the SHU, and sometime that same day he was involved in a physical altercation with two inmates. The records of the BOP establish that the plaintiff sent three Inmate Request To Staff, or "cop-outs" regarding these matters. The first was dated March 14, 2006, and was directed to Assistant Warden Taylor indicating he did not want to be placed in protective custody, and he wanted the inmates who threatened him disciplined. (Doc. 53-3, p. 11). The second is dated March 28, 2006, the day before the plaintiff was released from protective custody and is directed to Warden Haynes. In this cop-out, the plaintiff expresses his concern that staff had refused to interview him "to learn possible remedies to mitigate any threats from a few select disruptive inmates who are just bullies." (Doc. 53-3, p. 8). The final cop-out is dated April 2, 2006, after the physical altercation, and is directed to Warden Haynes. In it, he complains that he never received an in-person hearing within seven (7) days of his request to be removed from protective custody. In addition, he complains that Lt. Dupree terminated her interview with him before they could discuss methods to negate the threat against him. (Doc. 53-3, p. 9). Clearly, these cop-outs do not demonstrate that either the Warden or Deputy Wardens had actual or constructive knowledge that the SIS staff was engaged in conduct that posed an unreasonable risk of harm to the plaintiff, nor do they show deliberate indifference on their part, let

alone any causal connection between any inaction on their part and the eventual physical altercation on March 29, 2006. Therefore, the plaintiff cannot make a showing of supervisory liability, and the plaintiff's complaint against these three defendants should be dismissed.

**4. Deliberate Indifference**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendants knew of the risk and consciously disregarded it. Whitley v. Albers, 475 U.S. 312. 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991),

There appears to be no dispute that the plaintiff was physically assaulted by two inmates on March 29, 2006. However, the mere fact that the plaintiff was assaulted does not establish an Eighth

Amendment violation, and the record before the court does not support the plaintiff's allegations of deliberate indifference.

On March 7, 2006, at approximately 9:40 p.m., the plaintiff approached a Lieutenant at USP Hazelton and requested protective custody. He claimed that he needed the protection because he had organized books in the inmate library and had been approached by a group of inmates angry that certain books were in a new location. The plaintiff also claimed that another inmate informed him that the group in question would not accept his resignation from his library position as an apology for his actions so he needed to get off the compound. However, the plaintiff did not provide any names or identifying information regarding the inmates he claims approached him in the library. On the same date that he requested protective custody, the plaintiff was placed in Administrative Detention[2] pending investigation into his request for protective custody. (Doc. 53-2, pp. 2-3).

The Special Investigative Staff ("SIS") at USP Hazelton conducted an investigation into the plaintiff's request for protective custody from March 8, 2006, to March 29, 2006. The investigation included interviewing the plaintiff and the two inmates he named as assisting him with the group of inmates he alleges threatened him. Those interviews did not produce any information to support either the plaintiff's claim that he was surrounded by a group of inmates or his request for protective custody. In addition to conducting the interviews, the staff reviewed a video of the library during

---

[2]Administrative Dentention is "[a] form of separation from the general population used when the continued presence of the inmate within the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution. This housing status may also include inmates who require protective custody, those who cannot be placed in local population because they are en route to another institution (holdovers), and those who are awaiting a hearing before the Unit Discipline Committee or Discipline Hearing Officer. Administrative Detention status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of inmates or others, the protection of property, or the security or orderly running of the institution." Program Statement 5270.07, Chapter 9, Page 1. (Available for review online at www.bop.gov.)

the time period in which the plaintiff alleged that he was surrounded and threatened by a group of inmates. The review of the video produced no evidence of any threats to, or surrounding of, the plaintiff by any inmates. (Doc. 53-2, p. 3). [3]

On March 13, 2006, the plaintiff sent a handwritten note to the SHU Lieutenant indicating that he wanted to return to his regular unit as he no longer requested protective custody. (Doc. 53-2, p. 6). On March 29, 2006, the SIS concluded that there was no evidence to support a need for the plaintiff to remain in protective custody or Administrative Detention. Accordingly, the SIS staff recommended that the plaintiff be released to the general population. (Doc. 53-2, pp. 3-4).

On March 29, 2006, at approximately 3:00 p.m., the A-2 unit officer called for assistance after observing two inmates striking the plaintiff with closed fists to the head and upper torso. Staff responded to the unit and ordered the inmates to cease their actions. The inmates complied with staff orders and were restrained and removed from the unit without further incident. Each of the inmates were medically assessed and placed in the SHU pending further investigation. The investigation into the plaintiff's assault indicated that he had been assaulted because of his "conduct toward a certain segment of the inmate population."[4] The plaintiff remained in the SHU from March 29, 2006, until his transfer to FCI Cumberland on August 25, 2006.

In consideration of the undisputed facts surrounding the alleged threats made to the plaintiff

---

[3]The undersigned recognizes that the plaintiff alleges that he told investigators that the confrontation with the five inmates took placed in his housing unit. Even if the investigators reviewed the wrong tape, that error would amount to mere negligence not deliberate indifference.

[4]The plaintiff, in response to the defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, indicates that the segment of the population referred to are black inmates. The plaintiff further indicates that the defendants are suggesting that he made racial slurs which prompted the assault. However, the plaintiff maintains that he had been in the general population for two months, and he would have been assaulted much sooner had he been making racial slurs. (Doc. 61, p. 5).

and the eventual physical altercation that led to the plaintiff's transfer to another BOP facility, it is clear that the plaintiff cannot demonstrate deliberate indifference on the part of the defendants. The plaintiff was immediately placed in protective custody when he advised staff of threats made against him. Despite his request to be removed from protective custody, the plaintiff was kept in protective custody an additional two weeks until the investigation was completed. The plaintiff was released from protective custody only after staff found no evidence to substantiate his claim that he had been threatened by other inmates. Finally, although the plaintiff was indeed assaulted by two inmates soon after his release, he was again placed in protective custody and moved to another facility after a determination was made that he could not be returned to the general population at USP Hazelton. (Doc. ). Accordingly, the plaintiff's complaint should be dismissed in its entirety.

## C. **Plaintiff's First Motion to Amend Complaint**

On July 28, 2009, the plaintiff filed a Motion for Leave to File an Amended Complaint. Specifically, the plaintiff seeks leave to add Lt. G. Cooper as an individual defendant and alleges that he violated his constitutional rights on March 7, 2006 by (a) not investigating the actions of inmates who threatened him or not placing them in Administrative Detention, and (b) not forwarding a detailed report to the SIS lieutenant after interviewing the plaintiff upon his request for placement in Administrative Detention. The plaintiff also seeks leave to correct Harley G,. Lappin's position as Director in the caption of the case. Finally, the plaintiff seeks a request for compensatory and punitive damages against the defendants as well as a request for four medical procedures as additional relief to that requested in his original complaint.

Rule 15(a) of the Federal Rules of Civil Procedure permit a party to amend its pleading once as a matter of course before being served with a responsive pleading. Here, no responsive pleading

16

was filed,[5] and therefore, the plaintiff "motion" to amend his complaint must be granted as a matter of right. However, upon review of the only substantive allegation made by the plaintiff in the amended complaint, that Lt. Cooper violated his constitutional rights, it is clear that the amended complaint is subject to summary dismissal.

Liberally construed, the plaintiff is making additional arguments regarding deliberate indifference. However, although the plaintiff alleges that Lt. Cooper did not investigate the actions of the inmates who threatened him and did not forward a detailed report to the SIS lieutenant after he interviewed the plaintiff, those bare assertions do not give rise to an Eighth Amendment violation. The Court has before it the Declaration of Vicky Dupris, who was a lieutenant in the Correctional Services Department at USP Hazelton, and was responsible for investigating inmate claims regarding the need for protective custody. (Doc. 53-2). It is clear from her declaration, that Lieutenant Cooper was the correctional officer who the plaintiff approached at 9:40 p.m. on March 6, 2006, and requested protective custody. As previously noted, the plaintiff was placed in administrative detention pending further investigation into his request. SIS staff conducted that investigation, and there is no indication, nor even an allegation, that Lt. Cooper was a member of the SIS staff. Clearly, he conveyed the plaintiff's concerns to the appropriate staff and immediate action was taken. Therefore, the plaintiff can provide no showing that the Lt. Cooper was in any

---

[5]The phrase "responsive pleading" refers to the pleadings listed in Rule 7(a), that is, a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and if the court orders one, a reply to an answer. First Federal Sav. And Loan ass'n of Fayetteville v. Federal Home Loan Bank Bd., 426 F.Supp. 454 (W.D. Ark. 1977). Therefore, motions to dismiss and motions for summary judgment do not constitute "responsive pleadings," and therefore, do not preclude the plaintiff from amending his complaint as a matter of course. Manning v. Greenville memorial Hospital, 470 F.Supp. 662 (E.D. Va. 1979); Sohns v. Dahl, 392 F.Supp. 1208 (W.D. Va. 1975).

way deliberately indifferent to the plaintiff's safety.

**D. Plaintiff's Second Motion to Amend Complaint**

On August 19, 2009, the plaintiff filed a second Motion for Leave to Amend Complaint. Specifically, the plaintiff seeks leave to add the United States as a defendant, and seeks leave to add a claim for relief which is best described as a laundry list of operational changes within the BOP which the plaintiff claims will discourage acts of violence and provide a progressive culture conducive to reform within the prisons. In addition, the plaintiff seeks leave to add a claim for injunctive relief prohibiting the BOP from transferring him from FCC Coleman for any reason or placing him in the SHU for any specious reason.

Although Rule 15(a) allows a party to amend its pleadings once as a matter of course before a responsive pleading is served, in all other cases, a party many amend its pleading only with the opposing party's written consent or the court's leave. See Federal Rules of Civil Procedure, Rule 15(a)(2). This rule also provides that the court should freely give leave when justice so requires. Because the plaintiff seeks leave to add an improper defendant[6] and seeks relief which is not available from this Court,[7] the undersigned is of the opinion that the Motion to Amend should be

---

[6]As noted earlier, "any remedy under Bivens is against federal officials individually, not the federal government." Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1966). Therefore, the United States is not a proper defendant in this action.

[7]To the extent that the plaintiff seeks an injunction prohibiting the BOP from transferring him for any reason, the same is clearly not relief available from this Court. 18 U.S.C. §3621(b) provides that "[the Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate..." Furthermore, the transfer of a convicted and sentenced inmate is within the sound discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976). In addition, the operational changes the plaintiff requests are neither monetary nor injunctive, and therefore, not remedies available in a Bivens action. See

denied.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss and Motion to Substitute Party United States (Doc. 47) be **DENIED**; the United States' Motion to Dismiss (Doc. 50) be **DENIED AS MOOT;** the defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 52) be **GRANTED;** the plaintiff's Motion for Leave to File an Amended Complaint (Doc. 55) be **GRANTED;** the plaintiff's Motion for Leave to File an Amended Complaint (Doc. 58) be **DENIED**; and the plaintiff's complaint (Doc. 1) and amended complaint (Doc. 55) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the

---

Burnette v. United States of America, 2006 WL 1587942 (W.D. VA 2006).

19

Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: November 4, 2009

                                                             /s/ James E. Seibert
                                                             JAMES E. SEIBERT
                                                             UNITED STATES MAGISTRATE JUDGE